IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RALPH GATES III, | ) |
| | ) CASE NO. 1:09 CV 772 |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE DONALD C. NUGENT |
| | ) |
| UNITED STATES POSTAL SERVICE, | ) |
| | ) MEMORANDUM OPINION |
| Defendant. | ) AND ORDER |

This matter is before the Court on the Defendant, United States Postal Service's Motion for Summary Judgment. (ECF # 16). The Plaintiff filed a Response to the Defendant's Motion and the Plaintiff filed a Reply. (ECF #17, 25).

The complaint in this alleges four causes of action arising from Plaintiff's employment and termination from the United States Postal Service. Plaintiff alleges that the Defendant terminated him violation of the federal Family and Medical Leave Act ("FMLA") (Count One): terminated him in retaliation for exercising his rights under the FMLA (Count Two); terminated him in violation of public policy under Ohio law (Count Three); and violated the wage and labor laws by failing to pay him for required work hours.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff, Ralph Gates III, was employed by the United States Postal Service ("USPS" or "Postal Service") from September 10, 1994, until his termination, which was effective January 1, 2009. (Plaintiff's Depo., at 23). Plaintiff was given a Letter of Warning in Lieu of 7-Day Suspension for several non-FMLA related absences prior to January 20, 2006.

In 2006, Mr. Gates was diagnosed with gout. (Plaintiff's Depo., at 28, 33). He requested FMLA coverage for intermittent absences expected to result from flare-ups of this condition. He submitted a Certification of Health Care Provider completed by his doctor, dated May 19, 2006, indicating that he would required intermittent leave for absences ranging from 1-5 days per week depending on his pain, when he experienced flare ups caused by his gout. As required, Mr. Gates submitted updated Certifications on July 23, 2007 and on June 26, 2008. The USPS approved his request for intermittent FMLA leave when required for his gout pain. (Mazeke Dec., ¶ 5).

Subsequent to his request and approval for FMLA leave, Mr. Gates was frequently absent from or late for work. Many of these absences and late arrivals were considered "unscheduled absences" pursuant to USPS policy, because Mr. Gates did not call in to notify his employer that he would be late or missing from work.[2] Many but not all of the absences were related to his

---

[1] The factual summary is based upon the parties' statements of facts. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in a light most favorable to Plaintiff, the non-moving party.

[2] Postal Service policy required employees on FMLA leave to call in. (Mazeke Dec., ¶ 6). Mr. Gates was fully aware of this policy. (Plaintiff Depo., at 64, 93).

-2-

FMLA condition (gout).[3]

On July 16, 2007, Plaintiff was given a Letter of Warning in Lieu of a 14-Day Time Off Suspension for having four unscheduled absences within two weeks during the month of May, 2007. One of these absences was charged as "Absent Without Leave" or "AWOL," because Mr. Gates did not call in or come in to work. Plaintiff was counseled on attendance and his representative from the National Association of Postal Supervisors ("NAPS") was consulted. (Lindsey Dec., ¶ 10). In September of 2007, the USPS entered into a settlement agreement with Plaintiff and his NAPS representative, agreeing to remove the July 16, 2007 disciplinary letter from his file, and offering to also remove the January 2007 letter of warning from his file if his attendance improved, and if he would use the call-in notification system to notify his employer of when he needed to take unscheduled absences.

Plaintiff, continued to have unscheduled absences, and continued to have absences when he failed to show up for work, and failed to notify his employer that he would be absent. (Lindsey Dec., ¶ 13). When Mr. Gates did call in to notify his employer of absences, he did not reference his FMLA case number as required under USPS policy, even when prompted to do so by the automated notification system. (Mazeke Dec., ¶6). Plaintiff contends that he generally did call in on days when he was going to be absent all day, but on days he went in late due to his gout pain, he would fill out a Request for or Notification of Absence Form 3971 and tell one of his supervisors directly of his delay after he eventually made it in to work. (Plaintiff's Aff., ¶ 7-12).

---

[3] Plaintiff admits that some of his absences were not FMLA related, but were "emergency annual leave" necessitated by "transportation problems." (Plaintiff Depo., at 84-85).

Mr. Gates suffered additional discipline based on his absences and his failure to timely call in to report absences. He was notified by a letter dated December 10, 2008 that he would be terminated effective January 1, 2009, after having received a Notice of Proposed Adverse Action: Removal on October 7, 2008. The Notice of Proposed Removal cited 16 days of "unscheduled absences" over a 13 week period, including at least one full day when Mr. Gates was considered "AWOL" because he did not notify the USPS that he would be absent from work, four absences identified by Plaintiff as emergency annual leave unrelated to his FMLA condition, and three absences that were disapproved for FMLA coverage.

Mr. Gates filed the Complaint in this case on April 3, 2009. He asserts that he suffered adverse employment actions, by virtue of receiving a Letter of Warning in Lieu of a 14-day Suspension and by termination, in violation of the FMLA, and in retaliation for exercising his rights under that same statute. (Complaint, ¶¶ 29-35). Mr. Gates also alleges that his termination violates Ohio law. (Complaint, ¶¶ 36-44). Further, he claims that he owed additional wages for "undocumented hours ... he was required to work, and for which he has not been compensated in violation of the wage and hour laws of the United States and the State of Ohio." (Complaint, ¶ 45).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. The burden of showing the absence of any such "genuine issue" rests with the moving party:

-4-

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56©). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce

evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## ANALYSIS

A. FMLA Claims

This Court finds that there are genuine issues of material fact which preclude a finding for Defendant on the Plaintiff's FMLA claims, as a matter of law. Several questions of fact remain, including without limitation: whether Plaintiff provided sufficient notice as required under the relevant version of the FMLA (as opposed to the notification requirements put in place by the USPS); whether certain absences alleged to have been related to Plaintiff's FMLA covered condition were properly denied; whether these issues would have altered the disciplinary course of action taken by the USPS against the Plaintiff; whether absences addressed by the previous settlement agreement were improperly considered in future disciplinary actions; whether the

USPS would have terminated Mr. Gage's employment regardless of the absences allegedly related to his FMLA claims; and others. Consequently, Defendant's motion for summary judgment is denied in so far as it relates to Counts One and Two of the Plaintiff's Complaint.

B. <u>Wrongful Discharge under Ohio Law</u>

Count III of Plaintiff's Complaint alleges retaliation and wrongful discharge in violation of Ohio law, based on the USPS's alleged interference with and/or retaliation for taking FMLA leave. (Complaint ¶ 37). Defendant argues that this Court lacks subject matter jurisdiction over these claims because they are pre-empted by the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101, *et seq.*. The CSRA provides a comprehensive remedial scheme for federal employees to challenge adverse employment actions, thereby preempting state law and tort claims that might otherwise arise if the employee was employed by a private or state actor. *See, e.g., Sarulo v. U.S. Postal Serv.*, 352 F.3d 789, 796-97 (3d Cir. 2003); *Holliman v. Potter*, No. 09-60601, 2010 WL 338020, *2 (5th Cir. Jan. 28, 2010). The CSRA applies to Postal Service employees, by virtue of the Postal Reorganization Act ("PRA"), 39 U.S.C. § 1005(a)(1).

Plaintiff argues that the CSRA only preempts state law to the extent that the specific action conflicts with the remedial provisions prescribed by federal statute, and that the CSRA and FMLA provide separate and distinct remedial causes. Citing *Hunt v. Honda Am. Mfg. Inc.*, 2002 U.S. Dist. LEXIS 21859 (S.D. Ohio), Plaintiff further argues that FMLA expressly states that Congress did not intend for the FMLA remedies to be exclusive, and that federal law is not to preempt state claims.

The Court finds that whether or not the CSRA would preempt Plaintiff's state law claims, the Ohio Supreme Court has held that the protections afforded by the FMLA do not exist in Ohio

-7-

common law, and cannot be the basis for a cause of action for wrongful discharge in violation of Ohio public policy. *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 244, 773 N.E.2d 526, 528 (2002); *see also, Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713 (6th Cir. 2003). Therefore, regardless of the answer to the jurisdictional question, Plaintiff's claims for wrongful discharge in violation of Ohio public policy must be dismissed.

C. Fair Labor Standards Act (Wage and Hour Claims)

Pursuant to the Tucker Act, 28 U.S.C. §§ 1346, 1491, this Court does not have jurisdiction over the Plaintiff's wage and hour claims because they exceed the District Court's $10,000 jurisdictional limit. Jurisdiction over FLSA claims against the United States in excess of $10,000, lies exclusively with the Court of Federal Claims. *Waters v. Rumsfeld*, 320 F.3d 265, 270 (D.C. Cir. 2003); *Saraco v. United States*, 61 F.3d 863, 865-66 (Fed. Cir. 1995). Mr. Gates specified at page 19 of his Response to Defendant's Motion for Summary Judgment (ECF #17), that his wage and hour claims exceed $15,000, well over this Court's jurisdictional limit. His claim that this jurisdictional requirement applies only to exempt employees excluded from the provisions of the FLSA has no basis in law.

D. Wage and Hour Claims under Ohio Law

Plaintiff cannot recover on wage and hour claims under Ohio law because Ohio's wage and hour laws do not apply to federal government employees. R.C. §4111.03(D)(3)(a). The applicable Ohio statute specifically states that an employee, as defined under the law, "does not include ... any individual employed by the United States." Id.

-8-

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment, is GRANTED in Part, and DENIED in Part. Counts Three and Four are dismissed; Counts One and Two remain to be tried. IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: April 30, 2010